**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| MAHMOUD REZA BANKI,<br><br>*Plaintiff*,<br><br>v.<br><br>TREASURER OF THE STATE OF NEW HAMPSHIRE, in her official capacity; MEMBERS OF THE NEW HAMPSHIRE COLLEGE TUITION SAVINGS PLAN ADVISORY COMMISSION, in their official capacities; and FIDELITY BROKERAGE SERVICES LLC, d/b/a Fidelity Investments,<br><br>*Defendants*. | Case No. 3:24-cv-1149 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
**PERMANENT INJUNCTIVE RELIEF REQUESTED**
**DECLARATORY RELIEF REQUESTED**
**JURY TRIAL DEMANDED**

Plaintiff Mahmoud Reza Banki, for his Complaint for Declaratory and Injunctive Relief against Defendants, the Treasurer of the State of New Hampshire, the Members of the New Hampshire College Tuition Savings Plan Advisory Commission, and Fidelity Brokerage Services LLC d/b/a Fidelity Investments, alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action under the U.S. Constitution, 42 U.S.C. § 1983, and state law arising from Defendants' arbitrary, irrational, discriminatory, unexplained and, ultimately, unconstitutional refusal to allow Plaintiff to open a 529 plan account.

## PARTIES

2.      Plaintiff Mahmoud Reza Banki is a citizen of the United States and a resident of the State of Florida.

3.      Defendant the Treasurer of the State of New Hampshire ("the Treasurer") serves as the Trustee of the New Hampshire Higher Education Savings Plan Trust ("the Trust"). The Treasurer is sued in her official capacity, including her capacity as the Trustee of the Trust and as a member of the New Hampshire College Tuition Savings Plan Advisory Commission.

4.      The Defendant members of the New Hampshire College Tuition Savings Plan Advisory Commission ("the Commission") is responsible for the fiduciary administration and management of New Hampshire's college savings plans, including New Hampshire's UNIQUE College Investing Plan. The members of the Commission are sued in their official capacity.

5.      Defendant Fidelity Brokerage Services LLC d/b/a Fidelity Investments contractually administers the UNIQUE College Investing Plan for the State of New Hampshire.

2

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution, 28 U.S.C. § 1331, and 42 U.S.C. § 1983.

7.      This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.  Such claims are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy for purposes of Article III.

8.      This Court is authorized to grant the declaratory relief requested by Plaintiff pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

9.      Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.  *See infra* ¶¶ 27–40.

10.     Plaintiff resides in the Middle District of Florida and was a District resident at all times relevant to this Complaint.

## FACTUAL ALLEGATIONS

### *Plaintiff Mahmoud Reza Banki*[1]

11.     Plaintiff's life story is truly remarkable.  Plaintiff was born and

---

[1] Plaintiff brings this action under his full legal name.  He is known to family and friends, and professionally, as Reza Banki or M. Reza Banki.

raised in Iran.  In 1994, at age 18, he came to the United States, as one of the top 15 high school students in all of Iran, to attend college in America.  After deciding to make this country his permanent home, Plaintiff became a naturalized U.S. citizen in 1996.

12.    Speaking little English at first, Plaintiff attended Purdue University and then the University of California at Berkeley, from which he graduated in 1999 with two degrees—a B.A. in Mathematics and a B.S. in Chemical Engineering.  He went on to receive both an M.A. and a Ph.D. in Chemical Engineering from Princeton University in 2001 and 2005, respectively.

13.    Plaintiff wrote his doctoral thesis on his discovery of an important breakthrough in recombinant DNA and protein purification technology. Princeton Professor Saeed Tavazoie later wrote that Plaintiff was one of "the most promising young scientists I have ever known in my two-decades life in academia."  Plaintiff has authored a book on biotechnology, filed two patent applications, and published peer-reviewed articles in leading scientific journals.

14.    And then he decided to go to business school.  Plaintiff obtained an M.B.A. from UCLA's Anderson School of Management in 2014.

15.    By 2021, Plaintiff's business career had advanced to the point that

4

he was serving as the Chief Financial Officer and Chief Strategy Officer of Tubi, Inc., a media company that Fox Corporation had acquired for nearly half a billion dollars.[2]

### *Defendants' UNIQUE plan*

16.     A 529 plan is an investment vehicle offered by a State government and authorized by Section 529 of the Internal Revenue Code that offers certain tax advantages to investors.  *See* 26 U.S.C. § 529.

17.     The State of New Hampshire established and maintains the UNIQUE College Investing Plan ("the UNIQUE plan") as a tax-advantaged plan under Section 529.

18.     New Hampshire law makes all persons "eligible to participate in and benefit from" the UNIQUE plan "regardless of state of residency."  N.H. Rev. Stat. § 195-H:5.

19.     New Hampshire markets the UNIQUE plan as a plan open to all U.S. residents.  "The UNIQUE College Investing Plan is New Hampshire's tax-advantaged 529 college savings plan open to all U.S. residents—parents, grandparents, and family and friends can save with the UNIQUE plan."[3]

---

[2] *See* Joe Flint, *Fox Corp. to Buy Streaming Service Tubi*, Wall St. J. (Mar. 17, 2020), https://tinyurl.com/4ue85knn.

[3] *See Unique College Investing Plan,* N.H. State Treasury, https://tinyurl.com/2wj7pkcp (last visited Oct. 28, 2024).

20.    A Trust, the New Hampshire Higher Education Savings Plan Trust ("the Trust"), serves as the vehicle for the UNIQUE plan. Fidelity Investments, *College Investing Plan Fact Kit* 6 (Jan. 2, 2024), https://tinyurl.com/5n87awjj [hereinafter Fidelity *Fact Kit*].

21.    The Treasurer of the State of New Hampshire is the Trustee of the Trust. *Id.*

22.    Under state law, the New Hampshire College Tuition Savings Plan Advisory Commission is required to "ensure the proper administration and management" of the UNIQUE plan.  N.H. Rev. Stat. § 195-H:2(I)(a).

23.    The UNIQUE plan is administered and managed by Fidelity Brokerage Services LLC d/b/a Fidelity Investments ("Fidelity").  Fidelity *Fact Kit* ¶ 20, at 6.

24.    Fidelity markets the UNIQUE plan as a "national plan … sponsored by the state of New Hampshire."[4]

25.    A person establishing a UNIQUE plan account "must be a U.S. resident, maintain a U.S. mailing and legal address, have a Social Security number or Tax ID, and be at least 18 years old at the time an account is opened and when a contribution is made to an account."  Fidelity *Fact Kit* ¶ 20, at 6.

---

[4] *See    Investment    Products,    529    Savings    Plans,*    Fidelity, https://tinyurl.com/bdah9hdy (last visited Oct. 28, 2024).

26.    These are the only requirements for eligibility, and the plan does not provide reasons why an otherwise eligible person may have an application to open an account denied.

### *Plaintiff applies for, and Defendants deny him, a UNIQUE plan account*

27.    In October 2024, Plaintiff attempted to open a UNIQUE plan account, but Defendants rejected his application and refused to open an account for him, even though he satisfied all the eligibility requirements.

28.    On October 10, 2024, Plaintiff telephoned Fidelity to inquire about opening a UNIQUE plan account, and he spoke with a Fidelity representative.

29.    That same day, after the conversation, Fidelity sent Plaintiff an email with links to information about the UNIQUE plan and the process for opening an account. The email invited him to "Learn more about the UNIQUE College Investing Plan and open an account online."

30.    Fidelity's October 10, 2024 email to Plaintiff also stated that "The UNIQUE College Investing Plan, sponsored by the state of New Hampshire and managed by Fidelity, is a flexible, low-cost, and tax-advantaged way to help you save for college."

31.    Subsequently on October 10, 2024, Plaintiff applied for a UNIQUE plan account by completing and submitting the online application form.

32.    The next day, Friday, October 11, 2024, a Fidelity agent responded

to Plaintiff's application by sending him an email that stated in part: "Dear Mahmoud Banki: Thank you for contacting Fidelity regarding your account application. I am happy to assist you with this. Please accept this message as confirmation of receipt of your document. I have forwarded your document to our back office for processing. Normal completion time for this type of request is three to five business days." The Fidelity agent signed his email as "Stephen, Fidelity Brokerage Services LLC, Member NYSE, SIPC."

33. Eleven minutes after sending that email to Plaintiff, however, the same Fidelity agent, Stephen, sent Plaintiff another email. This email stated: "I wanted to follow up on your request after submitting your form for processing. It is very possible that this account will not be opened."

34. After not hearing from Fidelity again, on Monday, October 14, 2024, Plaintiff called Fidelity and asked about his application. After a long wait, a Fidelity representative told him over the phone that "Fidelity believes you will be better served elsewhere and does not want to have you as a customer."

35. Plaintiff asked the Fidelity representative to send him a letter or email regarding Fidelity's decision to refuse him a UNIQUE plan account, but the Fidelity representative refused and said the decision was final. The Fidelity representative refused to provide any further details.

36.    Thus, Defendants denied Plaintiff's application for a UNIQUE plan account.

37.    Defendants never explained to Plaintiff why they would not open a UNIQUE plan account for him.

38.    Plaintiff had completed and had submitted the application for a UNQIUE plan account, and he satisfied all of the eligibility requirements for such an account.

39.    Defendants neither told Plaintiff that he did not meet account eligibility requirements nor provided him with *any* explanation for their decision to reject his application despite his asking for such an explanation.

40.    Defendants also failed to give Plaintiff an opportunity to appeal their decision or, even before making the decision, to make his case as to why his application should be approved.

### *State action allegations*

41.    When the government confers its powers or functions on a private entity, the private entity becomes an agency or instrumentality of the government and is "subject to the same restraints," including constitutional limitations, as the government. *See Evans v. Newton*, 382 U.S. 296, 299 (1966).

42.    This ensures that governments cannot evade the Constitution by "[c]ontracting out" their functions to private entities like Fidelity. *See West v. Atkins*, 487 U.S. 42, 56 & n.14 (1988).

43.    Section 529 of the Internal Revenue Code states that "A qualified tuition program shall be exempt from taxation under this subtitle."  26 U.S.C. § 529(a).

44.    Section 529 also states that "For purposes of this section—The term 'qualified tuition program' means a program established and maintained by a State or agency or instrumentality thereof …."  26 U.S.C. § 529(b)(1).

45.    The UNIQUE plan is a qualified tuition program established and maintained by a State or an agency or instrumentality thereof under Section 529.

46.    By operation of law, pursuant to Section 529, Fidelity acts an agency or instrumentality of the State of New Hampshire when it administers the UNIQUE plan.

47.    By operation of law, pursuant to Section 529, Fidelity was acting as an agency or instrumentality of the State of New Hampshire when it denied Plaintiff's application for a UNIQUE plan account.

48.    Offering tax-advantaged 529 plan is a state function.  Only States may offer such plans.

49.    The State of New Hampshire and Fidelity have entered into a contract under which Fidelity administers the UNIQUE plan.  Both the State and Fidelity derive mutually conferred benefits from this arrangement.  The

relationship between the State and Fidelity with respect to the UNIQUE plan is a symbiotic one.

50. By offering a tax-advantaged college savings plan, the State encourages persons to invest in the UNIQUE plan. Many investors in the UNIQUE plan use funds in their plan account to pay for education provided by institutions of higher learning located in the State of New Hampshire, including its public universities such as the University of New Hampshire, Plymouth State University, and Keene State College.

51. Fidelity benefits financially from its arrangement with the State of New Hampshire. Under its contract with the State, Fidelity earns significant fees from administering the UNIQUE plan.

52. The State of New Hampshire uses its prestige and good name to sponsor and market the UNIQUE plan as a college savings plan, and the State is ultimately responsible for the plan. The interdependence of the State and Fidelity with respect the UNIQUE plan render them joint participants in the decision to refuse to allow Plaintiff to open a UNIQUE plan account.

**FIRST CLAIM FOR RELIEF:**
**(Violation of the Equal Protection Clause and Section 1983)**

53. Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

54. The Equal Protection Clause of the Fourteenth Amendment

11

provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1, cl. 2.

55.   Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …." 42 U.S.C. § 1983. This statute is referred to herein as Section 1983.

56.   When Fidelity processed and denied Plaintiff's application for a UNIQUE plan, its actions were those of a state actor.

57.   In violation of the Equal Protection Clause and Section 1983, Defendants refused to allow Plaintiff to open a UNIQUE plan account even though he satisfied all the eligibility requirements and even though Defendants have allowed countless persons similarly situated to him to open such accounts.

58.   A plaintiff states a "class of one" claim under the Equal Protection Clause where, as here, he has been subjected to intentional treatment that is different from the treatment of other similarly situated persons and there is no rational basis for the difference in treatment. *See Village of Willowbrook v.*

*Olech*, 528 U.S. 562, 564 (2000).

59.    Defendants intentionally denied Plaintiff's application for a UNIQUE Plan account even though they have allowed countless other similarly situated persons (i.e., persons who, like Plaintiff, satisfied all of the eligibility requirements and submitted a completed application) to open such accounts, and Defendants' denial of Plaintiff's application was arbitrary, irrational, discriminatory, and unexplained.

60.    The Supreme Court explained in its decision in *Village of Willowbrook* that "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."   528 U.S. at 564 (quotation marks and citation omitted).   Here, the State of New Hampshire and its duly constituted agent, Fidelity, intentionally and arbitrarily discriminated against Plaintiff.

61.    Defendants are liable to Plaintiff for legal, injunctive, or other relief under Section 1983.

### SECOND CLAIM FOR RELIEF:
### (Violation of the Due Process Clause and Section 1983)

62.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

63. The Due Process of Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1, cl. 2.

64. The relevant text of Section 1983 is set forth in paragraph 55 .

65. Plaintiff was entitled and eligible to apply for and open a UNIQUE plan account, and his entitlement and eligibility to do so was a protected interest in liberty and/or property for purposes of the Due Process Clause.

66. Plaintiff met all the eligibility requirements for opening a UINQUE plan account.

67. Defendants' rejection of Plaintiff's application for a UNIQUE plan account deprived him of liberty and/or property without due process of law, in violation of the Due Process Clause and Section 1983.

68. Defendants denied Plaintiff notice and an opportunity to be heard. Defendants refused to explain to Plaintiff the reasons why they would not open a UNIQUE plan account for him and denied him an opportunity to try to convince them that their reasons for doing so were wrong.

69. Based on their violation of Plaintiff's right of due process, Defendants are liable for legal, injunctive, or other relief under Section 1983.

### THIRD CLAIM FOR RELIEF:
### (Promissory Estoppel)

70. Plaintiff re-alleges and incorporates by reference all prior

14

paragraphs of this Complaint as though fully set forth herein.

71.    The elements of a promissory estoppel claim under Florida law are: (1) a promise made by the promisor; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) that in fact induced such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise.

72.    Through their marketing of the UNIQUE plan as an investment plan open to all U.S. residents, Defendants told and promised Plaintiff that he could apply for and open a UNIQUE plan account.

73.    Defendant should have reasonably expected that what they told and promised Plaintiff would induce action on his part by inducing him to apply.

74.    Defendants' promise induced action on Plaintiff's part by causing him to spend the time and effort necessary to go though the process of completing and submitting an application for a UNIQUE plan account, which he did.

75.    Enforcement of Defendants' promise, and only that, will avoid the injustice of Defendants' wrongful denial of Plaintiff's application for a UNIQUE plan account.

76.    Defendants' refusal to allow Plaintiff to open a UNIQUE plan is

unjust because it is arbitrary, irrational, discriminatory, unexplained, and unlawful.

## FOURTH CLAIM FOR RELIEF:
### (Tortious Interference With Prospective Business Relationship)

77.     Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

78.     The elements of a claim of tortious interference with a prospective business relationship under Florida law are (1) the existence of such a relationship; (2) defendant's knowledge of the relationship; (3) defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff.

79.     Plaintiff had a prospective business relationship with the State of New Hampshire as a person who was eligible for a UNIQUE plan account and submitted a completed application for an account.

80.     Fidelity knew about the relationship.

81.     Fidelity intentionally and without justification interfered with the relationship by denying Plaintiff's application for a UNIQUE plan account.

82.     Fidelity's interference with the relationship—its denial of Plaintiff's application—was deliberate, and its interference was arbitrary, irrational, discriminatory, and unexplained.

83.     Plaintiff would have opened a UNIQUE plan account if Fidelity

16

had not interfered with his application.

84.     Fidelity's interference with Plaintiff's opening of a UNIQUE plan account caused damage by denying Plaintiff the benefits of participation in this tax-advantaged investment plan.

85.     Fidelity is liable to Plaintiff for its tortious interference with his prospective business relationship with the State of New Hampshire.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A.     A judgment declaring that Defendants' past and ongoing refusal to allow Plaintiff to open a UNIQUE plan account was and is unlawful;

B.     An order permanently enjoining and requiring Defendants to allow Plaintiff to open and maintain a UNIQUE plan account;

C.     An award of attorney's fees and costs pursuant to 42 U.S.C. § 1988(b); and

D.     Such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff requests a jury trial in this case.

17

Respectfully submitted,

*/s/ Edward H. Trent*
H. Christopher Bartolomucci*
Edward H. Trent
Fla. Bar No. 957186
Brian J. Field*
Joshua J. Prince*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
etrent@schaerr-jaffe.com
bfield@schaerr-jaffe.com
jprince@schaerr-jaffe.com

*Application for special admission
forthcoming

*Counsel for Plaintiff
Mahmoud Reza Banki*

Dated:  November 8, 2024

18